UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| RHONDA OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 14-104-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Rhonda Oliver ("Oliver" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 11, 12] Oliver argues that the administrative law judge ("ALJ") assigned to her most recent case erred in finding that she is not entitled to a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). More specifically, she contends that the ALJ erred in accepting the testimony of a Vocational Expert ("VE") regarding jobs in the national and regional economy that she was able to perform.

Oliver seeks reversal of the ALJ's decision and remand for an award of benefits. However, the Commissioner asserts that the ALJ's decision is supported by substantial

evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Oliver.

**I.**

On April 21, 2009, Oliver applied for a period of disability and DIB under Title II of the Act. She alleged a disability beginning April 5, 2007. Following the denial of that claim, Oliver requested and received an administrative hearing before ALJ Sheila Lowther. Thereafter, ALJ Lowther issued a decision on March 3, 2011, finding that Oliver was not entitled to benefits under the Act. [*See* Administrative Transcript, "Tr.," at pp. 62-73.] In relevant part, the ALJ found that Oliver had a number of severe impairments (*i.e.*, chronic obstructive pulmonary disease, degenerative disc disease with chronic low back pain, and dysthymic disorder – a mild, but long-term form of depression), and could not perform her past work and or other identified, work-related activities.[1] Notwithstanding these findings, ALJ Lowther concluded that there were a significant number of jobs in the national economy that Oliver could perform. Based on the testimony of Vocational Expert Christopher

---

1   ALJ Lowther found that Oliver had the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk six hours in an eight hour workday; sit six hours in an eight hour workday; no climbing of ladders, ropes, or scaffolds and only occasionally climbing of ramps and stairs; occasional stooping, crouching, balancing, kneeling, or crawling; non concentrated exposure to vibration; and no moderate exposure to pulmonary irritants. [Tr., at p. 66]

The ALJ further concluded that, despite Oliver's mental impairment, she "retains the ability to perform simple, repetitive tasks in a low stress environment with occasional interaction with the general public, co-workers, and supervisors." [*Id.*] ALJ Lowther defined a "low stress work environment" to be one in which the Claimant "would not be required to meet production quotas, reoccurring deadlines, or perform fast paced work." [*Id.*]

Rymond, the ALJ identified the following jobs that a hypothetical individual with the Claimant's restrictions could perform: light bench assembly work (DOT # 722.687-010)[2]; sedentary assorting (DOT # 521.687-086); and light checking (DOT # 727.687-054). The VE identified these jobs as "unskilled" and having a SVP of 2. [Tr., at p. 72][3]

Having been denied disability benefits in connection with her first application, Oliver filed a second application for DIB less than three weeks later (on March 22, 2011). [Tr., at p. 234-35] Although Oliver again asserted an alleged onset date of April 5, 2007 for this claim, based on the earlier administrative determination, evaluation of the second claim was limited to whether the Claimant could establish a qualifying disability during the period from March 4, 2011, through March 31, 2012. (*See* Tr., at p. 11, citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and *Denard v. Sec'y of Health and Human Serv.*, 907 F.2d 598 (6th Cir. 1990).)

Oliver's second claim was denied initially and upon reconsideration. As a result, Oliver requested a second administrative hearing. [Tr., at pp. 121-22] That request was granted; however, Oliver was unable to attend the hearing which was initially scheduled for

---

2   The U.S. Department of Labor maintains a *Dictionary of Occupational Titles* ("DOT"). See generally U.S. Department of Labor, Employment & Training Admin., DOT, Contents (4th ed. 1991), 1991 WL 645958. A companion publication is also published by the U.S. Department of Labor: the *Selected Characteristics of Occupations* ("SCO"). The SCO is available at http://www.nosscr.org/sco/sco.pdf.

3   The Social Security Administration uses a "Specific Vocational Preparation ("SVP") rating system to determine the skill level of a claimant's past jobs. This rating indicates how long it takes a worker to learn to perform his or her job at an average performance level. The SVP numbers are determined by the Department of Labor. An SVP 1 indicates a short demonstration is required to learn a job while a SVP 2 may required training of up to one month. Jobs with SVP ratings of 1 or 2 are considered unskilled. Further, the DOT lists an SVP or an SVP range for each job listed.

February 27, 2012. [Tr., at pp. 54-58] As a result, the hearing was continued until July 2, 2012. [Tr., at pp. 27-53][4] Oliver, along with her attorney David Hicks, appeared before ALJ Roger L. Reynolds on that date. Vocational expert ("VE") Laura Whitten also testified at the hearing by telephone.[5] In a decision dated July 26, 2012, ALJ Reynolds found that Oliver was not disabled under sections 216(i) and 223(d) of the Act. [Tr., pp. 11-21]

Oliver was forty-one years old at the time of the ALJ's decision. She has a high school education and prior work experience as a hospital admissions clerk. [Tr., pp. 30-31] Olliver alleges that she is disabled due to back pain, breathing problems, headaches and anxiety. [Tr., at pp. 14, 31-43, 247, 259.]

After reviewing the record and considering the testimony presented during the administrative hearing, the ALJ concluded that Oliver suffers from the following severe impairments:

> COPD secondary to continued nicotine abuse, status post right lower lung lobectomy in 2000; degenerative disc disease of the lumbar spine with chronic low back pain; dysthymic disorder; anxiety disorder; migraine headaches; peptic ulcer disease; history of kidney stone; and history of sepsis in lungs post a uterine ablation procedure.

[Tr., at p. 14] ALJ Reynolds further concluded that the Claimant suffered from the several non-severe impairments which included polymenorrhea (abnormal uterine bleeding); opioid

---

4  Oliver was unable to attend the February 2012 administrative hearing due to a MRSA-related lung infection following surgery. However, it appears that the infection had resolved by the time of the July 2012 hearing.

5  As discussed more fully below, it appears that the ALJ had difficulty hearing and/or understanding the VE's testimony in its entirety. [*See* Tr., at p. 20.]

dependency, allegedly in remission; and obesity. [*Id.*] Notwithstanding these impairments, ALJ Reynolds found that Oliver retained the residual functional capacity ("RFC") to perform a limited range of light and sedentary work[6], subject to the following limitations:

> no climbing or ropes, ladders or scaffolds; occasional climbing of stairs or ramps; no aerobic activities such as running or jumping; no exposure to pulmonary irritants such as dust, smoke, gases, fumes, temperature extremes or excess humidity; no exposure to concentrated vibration; occasional stooping, kneeling, crouching or crawling; she requires entry level work with simple repetitive tasks in a low stress environment, that is, no rigid production quotas, recurring deadlines or fast paced work; no frequent changes in work routines; claimant should work in an object oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

[Tr., p. 18]

The issue presented in this case centers on the VE's testimony regarding whether jobs exist in the economy that a can be performed by a person with the above-listed restrictions. VE Whitten described Oliver's past work as semi-skilled in terms of the level of exertion required and having an SVP of 4. Further, VE Whitten testified that the skills used by Oliver in her past employment could be transferred to other jobs classified as either sedentary or light in their level of exertion. The ALJ then presented the VE with a series of hypothetical

---

6   As a general matter, sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying items such as files, ledgers, and small tools. It also involves sitting and occasionally walking and standing in carrying-out job duties. Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying objects weighing up to 10 pounds. Additionally, light work may require a "good deal" of walking or standing and it may involve sitting with some pushing and pulling of arm or leg controls. In most cases, a person who is able to do light work can also perform sedentary work. *See* 20 C.F.R. §§ 404.1567(a), (b).

questions containing additional restrictions relating to the Claimant. The following exchange occurred during the administrative hearing:

> Q. . . . If we assume first of all a person of Ms. Oliver's age, education, and experience with the capacity to – I want to say lift and carry up to 10 pounds frequently, 20 pounds occasionally, with no climbing of stairs or ramps; no aerobic activities such as running or jumping; no exposure to pulmonary irritants such as dust, smoke, gases, fumes, temperature extremes, or excess humidity; no exposure to concentrated vibration; occasional stooping, kneeling, crouching, or crawling; further requires entry-level work with simple, repetitive tasks in a low-stress environment, with no production quotas, no recurring deadlines or fast-paced assembly work, no frequent changes in work routines, and should work in an object-oriented environment with only occasional and casual contact with coworkers, supervisors, or the general public.
>
> Could such a person perform any of Ms. Oliver's past relevant work?
>
> A. No, Your Honor. Based on the ability to only do entry-level, simple routine, object-oriented work in a low-stress environment, the individual would be precluded from all of her past work.
>
> Q. Are there jobs that could be performed with those limitations?
>
> A. Yes, there are, Your Honor. However, I'm going to reduce my figures by 15 percent based on the low stress, no production quotas, or fast-paced work environment. I'll give you those reduced figures. This individual could perform simple bench assembly work. Again, reducing these figures by 15 percent at a light level of exertion in Kentucky, there would be approximately 7,00 [sic] of these jobs, in the United States approximately 600,000. The DOT code at a light level, SVP of 2, noting unskilled work, 722.687-010.
>
> This individual could also perform simple weighing, measuring, checking, and inspecting jobs. At a light level of exertion, again reducing these figures by 15 percent, in Kentucky that would be approximately 1,050 of these jobs, and in the United States approximately 355,000. It's a DOT code again at a light level, SVP of 2, noting unskilled work, 727.687-054.

[Tr., at p. 48-49]

The ALJ then questioned the VE about available jobs at the sedentary exertional level subject to the same restrictions. The VE provided the following responses to this line of inquiry:

> A. At the sedentary level of exertion, there is [sic] still jobs available in both categories I listed. But I would still [reduce] my figures by 15 percent for the low stress and no fast-paced production quota. At a sedentary level, the bench assembly work in Kentucky, there would be approximately 3,000 of these jobs, and in the United States approximately 225,000. The DOT code at a sedentary level, SVP of 2, noting unskilled work, 784.687-026. And for the simple weighing, measuring, checking, and inspecting jobs, sedentary level, again reducing these figures by 15 percent, in Kentucky there would be 225 of these jobs, and in the United States 140,000. The DOT code is sedentary level, SVP of 2, noting unskilled work, 609.687-014.

[Tr., at p. 50]

The ALJ then posed an additional hypothetical question containing greater restrictions regarding a claimant's tolerance level for any sort of exertion (*i.e.*, standing or walking for no more than one hour in an eight-hour workday, poor ability to react predictably in social situations or respond appropriately to criticism or instruction from supervisors, and a poor ability to demonstrate reliability because of identified physical and mental limitations). Although the VE indicated that there would be no jobs such an individual could perform, the ALJ did not subsequently find that Oliver had these additional limitations. Instead, based upon the VE's testimony, ALJ Reynolds concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the

-7-

national economy." [Tr., p. 20] Thus, the ALJ found that Oliver was not entitled to a period of disability or DIB under sections 216(i) or 223(d) of the Act. [Tr., p. 21]

In support of his ultimate conclusion, ALJ cited the above-referenced portion of the VE's testimony, noting that he had some difficulty hearing parts of it due to "technical difficulty."

> The vocational expert testified that given all of these factors [*i.e.*, the Claimant's RFC with the limitations identified] the individual would have been able to perform the requirements of representative light work unskilled occupations such as
>
>> Benchwork, The Dictionary of Occupational Titles No. 7,000 jobs in Kentucky and 600,000 in the nation
>>
>> Inspection, The Dictionary of Occupational Titles No. 727.687-054[7]: 1,050 jobs in Kentucky and 365,000 in the nation
>
> Or, at sedentary:
>
>> Bench assembly line worker, The Dictionary of Occupational Titles *number was unable to be heard due to technical difficulty*: 3,000 jobs in Kentucky and 25,000 in the nation.
>>
>> Checker: 225 jobs in Kentucky and 440 in the nation.[8]

---

7   As discussed earlier in this opinion, ALJ Lowther also concluded that Oliver was able to perform similar work, citing DOT Job No. 727.687-054 in her opinion. (*See* discussion infra at p. 3.)

8   Contrary to the Claimant's arguments, ALJ Reynolds did not cite DOT Job No. 609.687-014 in support of this particular finding. However, the transcript incorrectly identifies this as the citation provided by the VE during her testimony, rather than the correct reference to DOT 669.687-014. In addition to noting that the DOT job number could not be heard with reference to bench assembly worker at the sedentary level, the number of available positions cited in the ALJ's opinion do not match the jobs existing in the national economy for light inspection (365,000 vs. 355,000), sedentary bench assembly line worker (225,000 vs. 25,000) or sedentary checker (140,000 vs. 440). The technical difficulties that prevent the ALJ from clearly hearing the VE's testimony may also explain the error in transcribing DOT Job No. as 609.687-014 rather than 669.687-014.

(Italics added.)  [Tr., at p. 20]  However, based on this testimony and the ALJ's finding regarding Oliver's RFC and other relevant factors (age, education and work experience), the ALJ concluded that Oliver was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  Therefore, he concluded that she was not disabled during the relevant period of March 4, 2011 through March 31, 2012. [Tr., p. 20]

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that she suffers from a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve

months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support

the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Oliver's argues that the ALJ erred in concluding that there is other work in the national economy that she is capable of performing. [Record No. 11-1] More specifically, she asserts that ALJ Reynolds should not have relied upon the testimony of VE Whitten because her testimony regarding work that could be performed by Oliver conflicts with the Dictionary of Occupational Titles cited by the VE. According to the Claimant, the ALJ included in his hypothetical question to the VE the limitation that Oliver requires "simple light-level bench assembly work (DOT 722.687-010), simple light-level weighing, measuring, checking and inspecting jobs (DOT 727.687-054), sedentary bench assembly work (DOT 784.687-026, and simple sedentary weighing, measuring, checking, and inspection jobs (DOT 609.687-014). Oliver asserts that she is unable to perform these jobs

because she is limited to performing "simple repetitive tasks" according to the ALJ's own finding.

Oliver also asserts that: (i) DOT 609.687-014 does not exist; (ii) DOT 784.687-026 has a job title that is different than the job title identified by the VE[9]; and (iii) the two of the four jobs identified by the VE entail reasoning at a level of "2." Regarding this last point, Oliver notes that, as part of the General Educational Development ("GED") of the job, a worker at Level 2 must be able to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations," whereas a worker at Level 1 must only "apply commonsense understanding to carry out simple one- to two-step instructions and deal with standardized situations with occasional or no variables in or from these situations encountered on the job." [Record No. 11, pp. 3-4]

In response, the Commissioner points out that the decision of the ALJ should be confirmed because Oliver does not challenge one of the four representative jobs identified by the VE that the Claimant is capable of performing. [Record No. 12] Further, she contends that, notwithstanding Oliver's claims to the contrary, the VE's testimony does not conflict with the relevant Dictionary of Occupational Titles and the ALJ properly discharged his duty to inquire regarding any inconsistencies. The Court agrees with the Commissioner regarding these dispositive issues.

---

9    According to Oliver, the VE referred to this job as "sedentary bench assembly work" while the DOT job title is "endband cutter, hand." [Record No. 11-1, p. 3]

During the July 2012 administrative hearing, the VE testified that a hypothetical claimant with the limitations described by the ALJ could perform jobs that fell within two broad occupational groups: (1) simple bench assembly work and (2) simple weighing, measuring, checking and inspecting jobs. [Tr., at p. 50] The VE further identified two types of bench assembly jobs (*i.e.*, group 1) that the hypothetical claimant could perform, one of which required light exertional work (benchwork – DOT 722.687-010) while the other was sedentary (bench assembly line worker – DOT 784.687-026). In the other area identified (*i.e.*, group 2), the VE identified two inspection jobs that the hypothetical claimant could perform. Again, the first job identified required light exertional work (inspection – DOT 727.687-014), while the second required sedentary work activity (DOT 669.687-014). Regarding the last job identified, the it appears that the VE referenced DOT 609.687-014 rather that 669.687-014. However, the ALJ's opinion and the transcript indicate that there were problems correctly hearing the referenced sections of DOT.

The VE testified that all four jobs identified were unskilled with a Specific Vocational Preparation ("SVP") level of 2 according to the Dictionary of Occupational Titles prepared by the United States Department of Labor. An individual at this level must be able to develop the facility needed to perform a job after training which is anything beyond a short demonstration, up to and including one month of training. DOT, vol. II, app. C, pt. III, 1991 WL 688702. It is also noteworthy that the VE reduced the number of jobs available in the regional and national economies by 15 percent to account for limitations of low stress, no production quotas, and jobs that are not fast-paced. [Tr., pp. 49-50] Further, the VE's

testimony regarding a sit-stand option was based on her professional experience; however, this additional limitation was not included in the ALJ's final determination.

While an ALJ can take judicial notice of and rely upon vocational resources such as DOT and SCO and may also use VE testimony for such purposes, VE testimony "generally should be consistent with the occupational information supplied by the DOT [and SCO]." *See* SSR 00-4p; 20 C.F.R. §§ 404.1560(b)(2), 404.1566(d), and 404.1566(e). If there is a conflict, the ALJ must elicit a reasonable explanation for the conflict. SSR 00-4p, 2000 WL 1898704, at *2. In the present case, after questioning VE Whitten regarding the jobs identified, the ALJ determined that her testimony was consistent with information contained in the DOT. [Tr., p. 20]

And while counsel for the Claimant did not point out any inconsistencies with the testimony and information in the DOT during the administrative hearing, her attempt to do so now is not persuasive. *Calkins v. Sec'y Health & Human Servs.,* 793 F.2d 1290 (6th Cir. 1986) (table) (the district court was "permitted to disregard a rather typographical error" and properly "examine[] the opinion as a whole to interpret its true meaning"). As noted above, due to an inability to accurately hear the VE, the record notes that the VE referred to DOT 609.687-014 rather than DOT 669.687-014. DOT 669.687-014 references a sedentary inspection job of "Checker." The VE described the jobs as "simple weighing, measuring, checking, and inspecting jobs, sedentary level . . ." [Tr., p. 54] Thus, the reference to the incorrect DOT number is of no real significance.

Additionally, the SCO groups all of the jobs listed in the DOT into broader occupational categories requiring the same general type of work and capabilities of the worker. The SCO also describes those capabilities. VE Whitten testified that Oliver could perform "simple bench assembly work" and "simple weighing, measuring, checking, and inspecting jobs." [Tr., pp. 49-50] She then identified two DOT job numbers falling under each category. As the Commissioner notes in her memorandum, the VE's description of the referenced DOT jobs is consistent with the grouping and capability descriptions contained in the SCO.

While the DOT's job title of endband cutter differs from the VE's description of the same job as "sedentary bench assembly work", the SCO's occupational grouping confirms that an endband cutter is one specific type of the larger occupational category of sedentary bench assembly work. (*See* Record No. 12-1) The Court again agrees with the Commissioner that using different terminology to describe the same position does not provide a reason to reject the VE's testimony. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009). Likewise, all jobs identified by the VE require the ability to perform simple, repetitive tasks under the SCO. The difference in the reasoning level identified in the DOT is of no consequence. *Monateri v. Comm'r of Soc. Sec.,* 436 F. App'x 434, 446 (6th Cir. 2011) (unpublished) ("there is no precedent that required the Commissioner to align DOT 'reasoning levels' with [RFC] classifications"); *Matelski v. Comm'r of Soc. Sec.,* 149 F.3d 1183 (6th Cir. 1998) ("the reasoning development

requirements [in the DOT], as well as some other development requirements, are merely advisory in nature.").

Finally, even ignoring all of the Claimant's other arguments, Oliver has not alleged that the VE improperly identified the job of light bench assembly work (DOT 722.687-010 -"Switchbox Assembler I"). According to the VE, after reducing the numbers by 15% based on the requirement for low stress, no production quotas, and no fast-pace, there are 7,000 such jobs in Kentucky and 600,000 nationally. The Sixth Circuit has held that fewer than 1,000 regional jobs can be a significant number for purposes of determining whether a claimant is disabled. *Anderson v. Comm'r of Soc. Sec.,* 406 F. App'x 32, 35 (6th Cir. 2010) (unpublished); *Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 375 (6th Cir. 2006) (unpublished); *Harmon v. Apfel*, 168 F.3d 289, 292-93 (6th Cir. 1999); and *Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990). As the Commissioner correctly asserts, "as long as the VE's testimony is in response to an accurate hypothetical, the ALJ may rely on the VE's testimony to find that the claimant is able to perform a significant number of jobs." *Anderson, supra*, at 35; *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). In the present case, the ALJ presented the VE with an accurate hypothetical, reflecting the Claimant's relevant vocational factors and RFC.

## IV.

The increased use of technology allows parties, courts and administrative agencies to save time, reduce costs and avoid delay which is often inherent in litigation. Obviously, such savings have great merit. On occasion, however, when testimony is presented by telephone

or similar methods, words are missed, misunderstood, or incorrectly transcribed. And such errors can cause extended or unnecessary litigation, increase expense and waste judicial resources. This case illustrates that problem. However, the bottom line is that Oliver has not established that she is disabled as defined by the Act. Further, the ALJ did not err in his evaluation of her case; instead, his decision is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Rhonda Oliver's Motion for Summary Judgment [Record No. 11] is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

3. The administrative decision of Administrative Law Judge Roger L. Reynolds will be **AFFIRMED** by separate Judgment entered this date.

This 12th day of November, 2014.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge